UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

BRIAN SLUTZKIN,          )
        Petitioner,    )
                        )  No. 21 CV 50108
v.                       )  Judge Iain D. Johnston
                        )
ANDREW CIOLLI,           )
        Respondent.    )

**MEMORANDUM OPINION AND ORDER**

Petitioner Brian Slutzkin has filed a habeas petition under 28 U.S.C. § 2241 seeking the restoration of good conduct time he lost as a result of a disciplinary proceeding. For the reasons that follow, his habeas petition [1] is denied.

**BACKGROUND**

Mr. Slutzkin was an inmate at AUSP Thomson when he filed this habeas petition, though the underlying events occurred while he was at USP Allenwood,[1] and he is now at USP Hazelton.[2] His projected release date is May 26, 2022. *See* https://www.bop.gov/inmateloc (last visited February 3, 2022).

On July 15, 2019, officer M. Jenkins completed an incident report in which he alleged that Mr. Slutzkin had engaged in "[c]onduct disruptive to security or orderly running of a BOP facility." Response [10] at 15 (citing Bureau of Prisons Program Statement 5270.009 ("Inmate Discipline Program") at 45 (Prohibited Act 299)). Specifically, he described monitoring Mr. Slutzkin's outgoing mail and discovering a letter in which Mr. Slutzkin wrote the following:

> This shit is almost over Bae I know you don't want me far—but these motions is takin 2 long. This R-DAP program will get me out 4 sure 4 sure & once I have tha lawyer drop these leins on C/O Baptiste & Jenkins for breakin there "oath of office" they'll wish they nevea met me!! & wish they nevea broke conduct & try to set me up & my celly up. They won't be able 2 get pay checks with that lein, loan $ from a bank, etc. They'll be walked off tha jail by U.S. Fed. Marshalls!! No matter how much they try 2 fuck my outside communication up, they will not be able 2 halt my attorney visit with Joe & when I do eventually speak with Joe I will expose all these maggot ass pigs' names involved in this fiasco & I will give Joe my Bro's name <Kirk> so he kan speak with Kirk directly also.

---

[1] A habeas petition is properly filed in the district where the inmate is located at the time of filing. *Al–Marri v. Rumsfield*, 360 F.3d 707, 712 (7th Cir.2004).
[2] " . . . a prisoner's transfer from one federal facility to another during the pendency of a habeas corpus proceeding does not affect the original district court's jurisdiction." *In re Hall*, 988 F.3d 376, 378 (7th Cir. 2021).

Response [10] at 29.

      Mr. Slutzkin received a copy of the incident report on July 15, 2019. *Id.* at 6. On August 5, 2019, officer K. Bittenbender conducted a disciplinary hearing. Mr. Slutzkin was accompanied by a staff representative, J. Mowery. *Id.* at 22. According to the disciplinary hearing officer, Mr. Slutzkin made two statements during the hearing: "I am a sovereign citizen and I went to place a lien on those two officers, Jenkins and Baptiste," and "I was directing my attorney to do it, it's because of the charge for code 113 and if they don't stop harassing me; I want my phone calls back, my property that they lost so it's a notice of demand and I'm giving them a [chance] to correct it and if they don't then I place a lien on them." *Id.* at 22. Mr. Slutzkin denies making those statements during the hearing. Reply [13] at 5. In addition to the incident report and the alleged statements by Mr. Slutzkin, other evidence presented at the hearing included the letter at issue, the envelope in which Mr. Slutzkin attempted to mail the letter, and a memorandum from officer Jenkins explaining that he was able to identify the letter as being from Mr. Slutzkin because the envelope was addressed to the person Mr. Slutzkin had identified on his contact list as being his fiancé. Response [10] at 23.

      After considering all of the evidence, disciplinary hearing officer Bittenbender concluded that the greater weight of the evidence supported a conclusion that Mr. Slutzkin had committed the prohibited act of conduct disruptive to security or orderly running of a BOP facility. Response [10] at 23. Sanctions included the disallowance of 27 days of good conduct time, 60 days' segregation, 6 months loss of phone and visit privileges, and a $300 fine. *Id.* at 24.

      Mr. Slutzkin appealed, but the Central Office ultimately affirmed the disciplinary decision. Petition [1] at 11.

## ANALYSIS

      Persons in the custody of the Bureau of Prisons have a liberty interest in good conduct time, and can challenge the loss of good conduct time by filing a motion for habeas relief under 28 U.S.C. § 2241. *See Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). Although prisoners have due process rights in prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). As a result, a prisoner has received due process if each of the following requirements are met: the prisoner (1) receives written notice of the disciplinary charges at least 24 hours before a disciplinary hearing; (2) has an opportunity to be heard before an impartial decision maker; (3) is able to call witnesses and present evidence that will not be unduly hazardous to safety or correctional goals; (4) receives a written statement of the evidence relied on and the reason for the decision; and (5) receives disclosures of any exculpatory evidence. *Id.* at 564-66.

      The disciplinary decision will be upheld as long as it is supported by "some evidence in the record," which is a meager standard. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends."). On habeas review, the court does not reweigh the evidence or determine credibility. *See Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Rather, the court merely looks to whether there is *any* evidence in the record

supporting the disciplinary decision. *See Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994) (a court can overturn a disciplinary decision only if no reasonable adjudicator could have found the inmate guilty of the offense based on the evidence presented).

A federal prisoner must exhaust his federal administrative remedies before seeking habeas relief in court, but the requirement is not jurisdictional and so is waived if not raised by the respondent. *See Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). The respondent has not raised exhaustion as an affirmative defense, and Mr. Slutzkin received a decision from the Central Office denying his appeal, *see* Petition [1] at 11, and so it appears he has exhausted.

In his petition, Mr. Slutzkin alleges that the respondent violated his rights to due process in four ways. The Court considers each in turn.

1.  **Staff Representative Did Not Gather Evidence**

Mr. Slutzkin contends his staff representative failed to question any of his witnesses or gather any of the documents or exculpatory evidence Mr. Slutzkin requested. Under *Wolff*, a prisoner is entitled to a staff representative only if he is illiterate or his case is complex. *See Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992). Mr. Slutzkin is not illiterate as demonstrated by his letter and court filings, and his case is not complex because it merely involves the contents of a letter that Mr. Slutzkin does not deny writing. He contends in his reply brief that his case is complex because he was unable to gather documents on his own before his hearing because he was in the Special Housing Unit. Reply [13] at 4. But he never explains the relevance of any of the evidence he was unable to gather or how it would have made a difference to the outcome of his disciplinary proceeding. As a result, the Court cannot assess whether any of this evidence was exculpatory or even relevant. *See Rasheed-Bey v. Duckworth*, 969 F.3d 357, 361 (7th Cir. 1992) (inmate entitled to exculpatory evidence unless disclosure would threaten institutional concerns).

2.  **Sufficiency of the Evidence / Misuse of Disciplinary Process**

Mr. Slutzkin argues that the disciplinary decision against him was "built off fraudulent information," and constitutes a misuse of the disciplinary system. Petition [1] at 6-7. He contends that in his letter, he was merely venting his frustration to his wife about the oppressive and unprofessional treatment he received at the hands of officer Jenkins. *Id.* at 6. He states that he never actually directed his wife or lawyer to place any liens. *Id.* at 7; Reply [13] at 5. He asserts in his reply brief that the government should have provided a copy of his entire letter for context, not just the one page about liens that it attached to its response brief. Reply [13] at 5. He also denies making the statements attributed to him by the hearing officer in which he allegedly confirmed that he was directing his attorney to place liens on officers Baptiste and Jenkins. Reply [13] at 5.

As noted earlier, to comport with due process, a prison's disciplinary decision need only be supported by "some evidence." *Scruggs*, 485 F.3d at 941. Even setting aside the disputed statements of Mr. Slutzkin, the record still contains some evidence that he engaged in conduct that disrupts or interferes with the security or orderly running of the prison, namely the letter.

According to the letter itself, Mr. Slutzkin intended that his lawyer place liens on officers Baptiste and Jenkins to disrupt their finances, and eventually get them arrested. Response [10] at 29. Mr. Slutzkin argues that the government should have provided his entire letter to this Court to provide context, which would clarify that he was merely expressing his frustration to his wife about his treatment at USP Allenwood. But according to the disciplinary hearing officer's report, the letter was among the evidence he considered, and on review of a prison's disciplinary decision, a court does not second-guess the hearing officer's conclusion by reweighing the evidence or determining credibility. *See Meeks*, 81 F.3d at 720. Moreover, even page six of the letter reveals that Mr. Slutzkin was expressing frustration. The fact that Mr. Slutzkin did not carry out his expressed intent to place liens on the officers does not undermine the hearing officer's determination that his letter was tantamount to an attempt to "extort or blackmail staff," which "shows a great deal of disrespect for authority," and thereby disrupts prison security and orderly operations. Response [10] at 24. The Bureau of Prisons' interpretations of its own rules is entitled to deference because "latitude is necessary to ensure safety and order in a dangerous prison environment." *Hughes v. Werlinger*, No. 11 CV 219, 2014 U.S. Dist. LEXIS 58425, at *15-16 (W.D. Wisc. Apr. 28, 2014) (deferring to Bureau's interpretation of policy against possession of a "hazardous tool" to include the possession of a cellular telephone charger).

3.  **Biased Disciplinary Hearing Officer**

Next, Mr. Slutzkin contends that disciplinary hearing officer Bittenbender demonstrated bias against him by relying on false evidence, completing his disciplinary report before the hearing started, and by making him face a wall during the hearing. Petition [1] at 6.

To establish a due process violation based on bias, Mr. Slutzkin must show that his decision-maker was somehow involved in the underlying incident or its investigation. *See Temple v. Davis*, 84 Fed. Appx. 642, 644 (7th Cir. 2003). Mr. Slutzkin does not contend that officer Bittenbender was involved in the underlying incident or participated in the investigation. Rather, his allegations of bias are premised on officer Bittenbender relying on false evidence, prejudging his case, and making his face a wall during the hearing. But as discussed in the previous section, some evidence supported officer Bittenbender's conclusion that Mr. Slutzkin had committed the prohibited act of conduct disruptive to security or orderly running of the prison. Even disregarding the evidence of Mr. Slutzkin's statements that he disputes, the record still contained some evidence to find him in violation of prison policy, specifically, the letter itself in which he discusses having a lawyer place a lien on officers Baptiste and Jenkins. Given that the evidence supports the disciplinary hearing officer's decision, Mr. Slutzkin has not overcome the presumption of honesty and integrity afforded a hearing officer. *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

4.  **Excessive Sanctions**

Finally, Mr. Slutzkin contends that the sanctions imposed were excessive because the disciplinary hearing officer "is not authorized to take SGT & GTC prior to the year of the alleged infraction." Petition [1] at 6. As best as the Court can tell, Mr. Slutzkin contends that he could not lose more good conduct time during a single year than he can earn that year. But under the statute that provides for good conduct time credits, 18 U.S.C. § 3624(b)(2), "credit awarded

under this subsection . . . shall vest on the date the prisoner is released from custody." Accordingly, a prisoner's good conduct time credits "may be revoked at any time before the date of [his] release." *Pepper v. United States*, 562 U.S. 476, 501 n.14 (2011). Under the Inmate Discipline Program, the sanctions available for the violation of a 200-level prohibited act include up to 27 days "of good conduct time credit available for year." Inmate Discipline Program at 49. Mr. Slutzkin's sanction falls within that limit.

## CONCLUSION

For the reasons given, Mr. Slutzkin's petition [1] is denied, and this case is closed. The motion to expedite judgment [14] is denied as moot. Mr. Slutzkin is advised that this is a final decision ending his case in this Court. If he wants to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Mr. Slutzkin need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

Dated: February 3, 2022        By: _____
                                    Iain D. Johnston
                                    United States District Judge